IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAYMOND CASE, ET AL., :
:
    Plaintiffs, :
: Civil Action No. 2:08-CV-1171
    v. :
: Judge Algenon L. Marbley
DIRECTOR HELEN JONES-KELLY, :
  ET AL., : Magistrate Judge Abel
:
    Defendants. :

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants', Director Helen Jones-Kelly, et al., Motion for Summary Judgment (Doc. 10) and Motion for Judgment on the Pleadings (Doc. 11). Defendants contend that they are entitled to summary judgment because Plaintiffs' claims are moot, and because Defendants are entitled to sovereign immunity. For the reasons described below, Defendants' motions are **GRANTED** in part and **DENIED** in part.

**II. BACKGROUND**

Plaintiffs are four individuals, Raymond Case, Timothy Stolz, Jack Armstrong, and Julie Seymour, who each applied independently for Medicaid for the disabled. Defendant Douglas Lumpkin is currently serving as the Director of the Ohio Department of Job and Family Services ("ODJFS"). When the complaint was filed, Lumpkin was named as a defendant in his official capacity as the Director of the Franklin County Department of Job and Family Services ("FCDJFS"), and Helen Jones-Kelly was named in her official capacity as the Director of the Ohio Department of Job and Family Services. After the complaint was filed, Jones-Kelly resigned, and Lumpkin took over as Director of ODJFS. David Migliore is now the Director of

FCDJFS. In addition to the Directors of ODJFS and FCDJFS, the Board of Commissioners of Franklin County ("Board") has also been named as a defendant.

Medicaid for the disabled provides medically necessary services to individuals who establish their eligibility by proving that they meet certain financial requirements and the statutory definition of disability. 42 U.S.C. § 1396a. An individual in Ohio wishing to receive assistance through Medicaid for the disabled applies to the county Department of Job and Family Services. O.A.C. § 5101:1-38-01.2. The county then determines whether the individual meets the statutory definition of disability by collecting at least twelve months of medical records, paying for any necessary exams, and assisting the individual with the application process when requested. O.A.C. § 5101:1-39-3. Both federal law and Ohio law require that a determination be made "with reasonable promptness," which is defined to mean within ninety days of the application date. 42 C.F.R. § 435.911(a)(1); O.A.C. § 5101:1-38-01.2. Plaintiffs were required to wait longer than the maximum allowed ninety days for their eligibility determinations in this case. Each Plaintiff had his or her application approved in the weeks following commencement of this lawsuit.

Case applied on or about July 31, 2008, His application was not processed until February 5, 2009, more than the permissible ninety days after his application was filed. Case was awarded coverage retroactive to April 1, 2008.

Stolz applied on April 28, 2008. When his application had not been processed by July 30, 2008, Stolz requested a state hearing. The hearing was held on September 22, 2008. On December 15, 2008, Stolz's application was approved and he was awarded retroactive coverage to April 1, 2008.

Armstrong filed his application on January 29, 2007, and his application was denied on July 20, 2007, for lack of medical documentation. Stolz requested a hearing, and he was assisted in obtaining medical documentation. His application was approved on January 29, 2009, and he was awarded coverage retroactive to September 1, 2006.

Seymour filed her application on or around February 21, 2007. Her application was denied on April 30, 2007. She appealed, and a hearing was held on July 20, 2007. Defendants were ordered to assist Seymour in obtaining necessary materials. On October 15, 2007, her application was denied for the second time. She requested another hearing, and a second hearing was held on December 13, 2007. Defendants were ordered to rescind her denial and assist her in obtaining medical records. On July 22, 2008, Seymour received a third denial notice. On August 12, 2008 a third hearing was held. On January 28, 2009, Seymour's application was approved, and she was granted benefits retroactive to November 1, 2006.

When Plaintiffs initially filed their complaint, they sought a declaratory judgment that Defendants had violated Plaintiffs' civil rights under the Social Security Act and the Due Process Clause of the Fourteenth Amendment; injunctions ordering Defendants to provide Plaintiffs with the appropriate Medicaid coverage[1] and to process Medicaid applications with reasonable promptness; and compensatory damages.

---

[1] Defendants have already provided this relief, as they processed Plaintiffs' applications shortly after the complaint was filed in this case.

# III. STANDARD OF REVIEW

## A. SUMMARY JUDGMENT

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## B. JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12©. A motion for judgment on the pleadings under Rule 12© attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 553 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

Although liberal, this standard requires more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (internal quotations omitted)). While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12© motion is granted only if

there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.,* 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. LAW & ANALYSIS

Defendants contend that they are entitled to judgment on the pleadings or, in the alternative, summary judgment, for two reasons: (1) Plaintiffs' claims for injunctive relief are moot; and (2) Defendants are entitled to immunity against Plaintiffs' claims for compensatory damages.

### A. MOOTNESS

Under Article III of the United States Constitution, a federal court only has jurisdiction over a live case or controversy. U.S. Const. art. III § 2; *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis*, 494 U.S. at 477. And "[p]ast exposure to illegal conduct does not in itself does not show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). There are, however, two exceptions to the mootness doctrine. First, a case will not be dismissed even when a plaintiff's claim has become moot if the circumstances are such that the injury is capable of repetition, yet evading review. *Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975). Second, a case will not be dismissed where a plaintiff's claim has been mooted by a defendant's voluntary cessation of allegedly improper behavior. *Friends of the Earth, Inc. v. Laidlaw Env. Svcs.*, 528 U.S. 167, 189 (2000).

## 1. Capable of Repetition Yet Evading Review

"[T]he 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein*, 423 U.S. at 149. Durations short enough to satisfy the first requirement include the nine-month (266-day) duration of a pregnancy, *Roe v. Wade*, 410 U.S. 113, 125 (1973); periods of hospitalization lasting less than a month, *Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996); and a sixty-day limit on inpatient hospital benefits, *Colautti v. Doe*, 592 F.2d 704, 707 (3d Cir. 1979). A "reasonable expectation" satisfying the second requirement exists where a plaintiff is a woman who may become pregnant again, *Roe*, 410 U.S. at 125; where a plaintiff is subject to "the possibility of periodic hospitalizations for the rest of her life" because of "serious chronic health problems," *Granato*, 74 F.3d at 411; and where a plaintiff has "an erratic past, from hospitalization to discharge to hospitalization again," *Colautti*, 592 F.2d at 707.

Each of the Plaintiffs in this case was subject to a waiting period, forbidden by statute from lasting more than ninety days, before his or her Medicaid for the disabled application was processed. The average actual waiting period for processing of a Medicaid for the disabled application in Ohio is 258 days (Resp. at 17). Using either time period as a benchmark – the ninety-day mandated maximum, or the 258-day actual average – the duration of time is sufficiently short to satisfy the first requirement.

Plaintiffs allege that there is a reasonable expectation that each of them will be subjected to the same action again, because of the chronic but treatable nature of their conditions. They

fear that through treatment, they will improve enough to be dropped from their Medicaid for the disabled coverage, only to deteriorate again and have to re-apply for coverage. While conceding that "it is impossible to speculate as to when and why these Plaintiffs will need to reapply for benefits," (Resp. at 18), Plaintiffs rely on a study performed by Dr. Benjamin Sommers to support their contention. Dr. Sommers performed a national study of 4,992 adults and 8,599 children enrolled in Medicaid. He concluded that within under two years of enrollment, 55% of the individuals in his study had been disenrolled, including 31% of those individuals whose disabilities should have meant that they were always eligible for assistance. (Resp. at 18; Sommers Aff. at ¶¶ 13-14). In fact, since this case was filed, two of the Plaintiffs, Stolz and Armstrong, have been mistakenly "slated for removal from the Medicaid rolls, and were spared from that eventuality only through the intervention of their attorneys." (Resp. at 18; Stolz Aff.; Armstrong Aff.) Given the chronic nature of the Plaintiffs' conditions; their ability to improve through treatment and eventually be removed from Medicaid coverage, only to deteriorate and have to apply again; and their prior experience with the threat of removal from coverage, there is a "reasonable expectation" that these Plaintiffs will be subject to the same action again, and the case will not be dismissed as moot.[2] Indeed, Plaintiffs' claims are cable of repetition, yet evading review.

---

[2]One Plaintiff, Julie Seymour, has been determined by the Social Security Administration to be disabled. As a result of that determination, it is unlikely she will ever be required to go through the eligibility process again, and her claim is moot. The other four Plaintiffs, however, may proceed with their claims.

## 2. Voluntary Cessation of Illegal Conduct

Defendants contend that Plaintiffs' claims are moot because each of Plaintiffs' applications has been processed. The applications were each processed in the weeks following the filing of this lawsuit. (Resp. at 11-14) Even if the facts of this case were not capable of repetition, yet evading review, a case is not rendered moot by "a defendant's voluntary cessation of a challenged practice." *Friends of the Earth*, 528 U.S. at 189**.** "If it [were], the courts would be compelled to leave the defendant . . . free to return to his old ways." *Id.* (internal quotation marks omitted). As a result, "[t]he test for mootness in cases such as this is a stringent one. . . . A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. The Concentrated Phosphate Export Assoc., Inc.*, 393 U.S. 199, 203 (1968) (emphasis added). The case will only be moot as the result of voluntary cessation "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." *United States v. T. Grant Co.*, 345 U.S. 629, 633 (1953) (quoting *United States v. Aluminum Co. Of America*, 148 F.2d 416, 448 (2d Cir. 1945)). *See also Friends of the Earth*, 528 U.S. at 170 ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

Even voluntary cessation in the form of repealing a statute may not be sufficient to moot a case. *See, e.g. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (holding that a city's repeal of part of an ordinance did not moot the case because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the

District Court's judgment were vacated"). In addition, compliance with a court order may be insufficient to moot a case. *See, e.g., Bakery Drivers v. Wagshal*, 333 U.S. 437, 442 (1948) (holding that case was not mooted by union's lifting of boycott pursuant to court order).

Defendants' behavior in this case falls far short of meeting its burden in establishing that it is absolutely clear that its failure to process Medicaid claims with reasonable promptness will not recur. Defendants have merely processed the applications of these four individuals after being prompted by the filing of a federal lawsuit. There has been no evidence to this point that Defendants have done anything to solve what appears to be a systemic problem. Merely taking prompt action in response to a federal complaint, after taking no action at all for approximately nine months, does not convince this Court that this behavior will not be repeated. As a result, Defendants' voluntary cessation of the behavior complained about here does not moot Plaintiffs' claims.

Because Plaintiffs' claims for injunctive relief are not moot, neither summary judgment nor judgment on the pleadings is proper.

## B. IMMUNITY

Because the claims are not moot, the Court must address Defendants' assertions of immunity. Defendants concede that the Eleventh Amendment does not bar suits for injunctive relief against the state or county officials under *Edelman v. Jordan*, 415 U.S. 651 (1974).[3] Both

---

[3]While conceding that they do not enjoy immunity from Plaintiffs' claims for injunctive relief, Defendants contend that those claims are moot, as discussed above. Because the Court finds that Plaintiffs' claims for injunctive relief are not moot, and because Defendants neither assert nor are entitled to immunity on those claims, those claims may proceed.

the Director of ODJFS and the Director of FCDJFS, however, assert Eleventh Amendment immunity against Plaintiffs' claims for compensatory damages.

### 1. Director of ODJFS

The Eleventh Amendment bars suits for compensatory damages against state officials acting in their official capacities. *Edelman*, 415 U.S. at 663 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Because the Director of ODJFS is only being sued in his official capacity, he is immune from Plaintiffs' claims for compensatory damages.

### 2. Director of FCDJFS

The Eleventh Amendment does not generally bar suits against "counties and similar municipal corporations." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (citing *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)). If a local entity is acting as an "arm of the state" in engaging in the challenged conduct, however, Eleventh Amendment sovereign immunity is granted to that local entity. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citing *Mt. Healthy*, 429 U.S. at 280). When determining whether an entity is acting as an arm of the state, courts consider four factors:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes, and state courts, refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local official appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Ernst*, 427 F.3d at 359 (internal citations omitted). The first factor carries the most weight. *Id.*

### a. State's Potential Liability

The State's potential liability for a judgment against a local entity is evaluated based on "the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case." *Id*. "'Where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against the state treasuries, common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach to the agency.' There is no such requirement where the agency is structured . . . to be self-sustaining." *Hess v. Port-Authority Trans-Hudson Corp.*, 513 U.S. 30, 50 (1994).

Courts evaluating immunity with respect to county Departments of Jobs and Family Services have come out different ways when determining the State's potential liability. In *Lowe v. Hamilton County Job & Family Services*, 2009 WL 818960 (S.D. Ohio March 27, 2009), the court found the potential liability factor to weigh against immunity, in part because the county agency conceded that "Hamilton County funds will pay any potential judgment," and the agency did not "present evidence that the state will reimburse [the County] for costs requested by the County." *Lowe*, 2009 WL 818960 at * 5. In contrast, in *Gamble v. Ohio Department of Job and Family Services, et al.*, 2006 WL 38996 (S.D. Ohio Jan. 5, 2006), the court found this factor to weigh in favor of immunity because the county agency was "an integral part of a state-conceived and directed distribution system for state and federal public assistance dollars . . . [which] relies heavily on the state treasury to carry out its mission." *Gamble*, 2006 WL 38996 at * 7. The difference between these two cases, which is critical to Plaintiffs' claims here, is that in *Lowe*, the plaintiffs were asking for damages – not payment of funds that had not been disbursed – whereas in *Gamble*, the plaintiffs were seeking to recover payment of funds that had not been

disbursed, in addition to damages. Plaintiffs here initially requested payment of funds that had not been disbursed. Because their applications were processed and benefits were distributed soon after the filing of their complaint, however, they now seek only damages. Were they still seeking disbursement of Medicaid funds, the State treasury would no doubt be implicated, as the State is responsible for financing Medicaid benefits. That is not the case here, however, because Plaintiffs no longer seek those State-funded benefits.

Federal regulations specifically exclude "[f]ines, penalties, damages, and other settlements resulting from violations (or alleged violations) of, or failure of the governmental unit to comply with, Federal, State, [or] local . . . laws." 2 C.F.R. Pt. 225, App. B, ¶ 16. In addition, a representative of FCDJFS on financial and budgetary issues conceded that Ohio does not reimburse county agencies for damages or settlements paid as the result of a lawsuit. Neither the federal nor the state treasury, therefore, is implicated in this case. Because FCDJFS is solely responsible for any judgment rendered in this case, and the State runs no risk of potential liability, the first factor weighs against granting FCDJFS immunity as an arm of the state.

### b. State Control over County's Actions

The second factor, how state courts and statutes refer to the entity and the degree of state control over the county's activities, presents a factual dispute. Plaintiffs claim that, despite some role played by the State in determining Medicaid eligibility, most of the responsibility falls on FCDJFS. (Resp. at 27-32.) Defendants, in contrast, contend that they are "under extensive and detailed state control." (JP Motion at 12.) Defendants support that contention by pointing to the Ohio statutory scheme that invokes county participation in the Medicaid program even though "it would also be within the federal grant for Ohio to not involve the county departments of job

and family services at all." (*Id.* at 11.)  However, "[t]he existence of a state statute creating an entity, or broadly authorizing that entity's activities, does not in itself render that entity an 'arm of the state.'" *Gamble*, 2006 WL 38996 at *7 (citing *Botherton v. Cleveland*, 173 F.3d 552, 561 (6th Cir. 1999)).  The question, instead, is whether the State exercises "extensive and detailed control over" the county's activities.  *Ernst*, 427 F.3d at 360.

The county function at issue in this case is determining eligibility for Medicaid.  There is no doubt that both federal and Ohio law provide some rules and regulations governing who is eligible for Medicaid coverage.  *See, e.g.*, O.A.C. § 5101:1-1-36 (noting that federal law "mandates that state agencies administering federally funded public assistance programs develop and implement an income and eligibility verification system" and outlining Ohio's system).  It is not clear from the record, however, exactly how much discretion the County has in implementing the broad requirements imposed by the State.  Plaintiffs allege that discovery has demonstrated that where no specific regulatory language covers a given situation, the County is given complete discretion to handle the situation as it sees fit.

Defendants point to *Community Mental Health Services v. Mental Health and Recovery Board*, 395 F.Supp.2d 644 (S.D. Ohio April 22, 2004) to support their contention that the State controls the County's functions in this case.  However, that case involved a Mental Health and Recovery Board ("MHRB") and its distribution of funds to third-party contractors providing services to mentally ill patients.  *Community Mental Health Services*, 395 F.Supp.2d at 647-48.  While the court in that case did find that the MHRB was "perform[ing] [its] duties under the oversight and control of ODJFS," *Id*. at 651-52, that case involved an entirely different agency performing an entirely different function than the one at issue here.  *See Lowe*, 2009 WL 818960

at *6 (distinguishing *Community Mental Health Services* because it involved a different agency performing a different function).

Here, it is not clear what role the State actually plays in overseeing the FCDJFS's Medicaid eligibility determinations. A factual dispute remains, therefore, rendering summary judgment inappropriate.

### c. Appointment Authority

The third factor is the State's authority to appoint the local entity's board members. Defendants concede that the State has no appointment authority, and that the Board bears all appointment responsibility. (JP Motion at 14.) This factor therefore weighs against granting Defendants' motions.

### d. Traditional Function Performance

The final factor is whether the local entity is performing a function traditionally performed by the state. Plaintiffs allege that "welfare administration is a traditionally local function," (Resp. at 33), while Defendants contend that "it would be well within the authority of the General Assembly to provide its citizens with benefits like Medicaid." (JP Mot. at 14.) The fact that the State *could* provide this type of service, however, does not necessarily mean that this is a service traditionally performed by the state. In fact, the authority to which Defendants point for their contention actually found that this factor weighed "weakly against a grant of sovereign immunity." *Gamble*, 2006 WL 38996 at *10.

Courts in the Sixth Circuit have reached various results when determining whether public assistance programs should be considered traditionally state or local functions. *See id*. (collecting cases). The record contains insufficient facts on this issue for the Court to determine

that Medicaid or other public welfare programs are services traditionally performed by either the state or the county.

Because FCDJFS has been unable to establish that it is acting as an "arm of the state" in making Medicaid eligibility determinations, and because the pleadings do not establish that Plaintiffs are not entitled to relief, neither summary judgment nor judgment on the pleadings for the Director of FCDJFS and the Board is proper.

## V. CONCLUSION

For the foregoing reasons, the Director of ODJFS's Motion for Summary Judgment is **GRANTED** to the extent that the Director is immune from Plaintiffs' claims for compensatory damages, and to the extent that Plaintiff Julie Seymour's claim is moot, but **DENIED** in all other aspects. FCDJFS's Motion for Judgment on the Pleadings is **GRANTED** to the extent that Plaintiff Julie Seymour's claim is moot, but **DENIED** in all other aspects.[4]

**IT IS SO ORDERED.**

/s Algenon L. Marbley
**Algenon L. Marbley**
**United States District Judge**

**Dated: January 5, 2009**

---

[4] Plaintiffs also filed a Motion to Strike a Portion of the Reply Brief of the Franklin County Defendants (Doc. 47). That Motion is now **MOOT**.